734 A.2d 210

**In re PRINCE S.**

**No. 155, Sept. Term, 1998.**

Court of Appeals of Maryland.

July 30, 1999.

Martha Weisheit, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for appellant.

C.J. Messerschmidt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and Judith L. Fitzgerald, Asst. Atty. Gen., on brief), Baltimore, for appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and ROBERT L. KARWACKI (Retired, Specially Assigned), JJ.

PER CURIAM.

In 1995, Prince S. was found by the Juvenile Court in Montgomery County to be a child in need of assistance. The court placed Prince under the protective supervision of the Department of Social Services, later renamed the Department of Health and Human Services (HHS), but directed that his physical custody was to remain with his mother. That situation was confirmed by the court, after review hearings, in December, 1995, and in February, April, and July, 1998.

On August 6, 1998, HHS filed a request for "Statutory Emergency Hearing" seeking an immediate change of placement to a more restrictive environment. Such a hearing was held five days later, at which, through counsel, Prince, his mother, and HHS were present. The basis of the request, as explained by the HHS social worker, was a report she received on July 27 about a series of incidents in which Prince, who was then 10 years old, had been "bullying" younger children in the neighborhood, causing a great deal of resentment and the involvement of the police. It was not clear whether Prince instigated the encounters or, as asserted by his mother, he was reacting to provocations from the other children. The social worker, who had no personal knowledge of the episodes, seemed concerned only about the child's safety and the ability of the mother to deal with the immediate problem. She recommended placement in a group home. The home she had in mind was not available for another three days, however, and the social worker said that she would have

no objection to the child staying with a particular relative in the meanwhile, although, because the department had not been able to do the required background check on the relative, she could not formally recommend such a placement, even temporarily.

Counsel for Prince noted that the child, who was personally present in the courtroom, had some scars on him at that time, including some fresh wounds, but averred that the child wanted to stay with his mother, "despite the fact that he's getting beaten up all the time." Counsel for the mother agreed that HHS "has valid concerns about Prince having problems in the neighborhood" but indicated doubt whether he was the aggressor or the victim. She wanted a full evidentiary hearing to determine that issue. The mother, she said, was willing to let the child stay with relatives but objected to a group home. Her plan to provide protection for Prince was to keep him in the house more. Counsel's point was that it was inappropriate to put Prince in a group home because of problems in the neighborhood.

The court, without assigning fault, noted everyone's agreement that the child was in some danger and declared that keeping the child in the house was not the answer. The court directed that Prince stay with the designated relatives until the group home became available and ordered HHS to make an investigation of the circumstances in the neighborhood. It noted that there was another review hearing scheduled for October 22—nine weeks hence—but that "[i]f we can resolve things and get him back in the home safely before that time I'd take it as an emergency hearing if we have agreement." Counsel for the mother renewed her request for a "shelter care" hearing to determine who was at fault for the problem in the neighborhood. She said that she had no opportunity to "cross-examine witnesses." The court's view, however, remained that the child was then in some danger and that the problem could not be resolved by keeping him in the house. It therefore signed an order continuing the commitment to HHS but directing that Prince stay with the designated relatives pending placement in the group home.

The mother promptly filed a motion for reconsideration, asking that the court reconsider its order removing Prince from her custody and that it conduct a full hearing "equivalent to an adjudicatory hearing" within 30 days. She regarded the placement as being in the nature of "shelter care" and urged that, under Maryland Code, § 3–815(d) of the Courts and Judicial Proceedings Article, shelter care may not be continued for longer than 30 days unless an adjudicatory or waiver hearing is held. The emergency hearing, she averred, could not itself constitute an adjudicatory hearing because it was not an evidentiary hearing. When the motion was denied, the mother filed two notices of appeal—one from the initial emergency order and the other from the order denying the motion for reconsideration.

We granted *certiorari* on our own initiative, prior to proceedings in the Court of Special Appeals, to consider the single issue, "[w]hen a child has been adjudicated a [child in need of assistance], but continued in parental custody, can a court later remove the child from the home on an emergency basis without providing an evidentiary hearing on the removal within thirty days." We were not aware when we granted the writ that on January 21, 1999—12 days before the brief was filed—the juvenile court, after another review hearing, returned Prince to the custody of the mother. The appeal, therefore, is utterly moot. There is no effective relief that this Court could provide to appellant, even if we were to agree with her position. The mother was seeking no more than an evidentiary hearing to determine whether custody should be returned to her. That hearing has been held and, as noted, custody has been returned to her. The appeal, therefore, will be dismissed.[1]

---

1. We note from the transcript of the January 21, 1999 review hearing that a further review hearing was anticipated 60 days thereafter. We have no information as to whether such a hearing was then held and, if so, whether there was any change in the custody arrangement. This case was argued on May 10, 1999.

APPEAL DISMISSED; APPELLANT TO PAY THE COSTS.